UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| JOANNE LYNN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 22-459 (RBW) |
| | ) |
| ALTARUM INSTITUTE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Dr. Joanne Lynn, brings this civil action against the defendant, Altarum Institute ("the Institute"), asserting a claim of discrimination based upon her age, in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01–2-1404.04. See First Amended Complaint for Equitable and Monetary Relief and Demand for Jury Trial ("Am. Compl.") at ¶¶ 33–43, ECF No. 7. Currently pending before the Court is the Institute's motion to dismiss. See Altarum Institute's Motion to Dismiss Plaintiff's First Amended Complaint ("Def.'s Mot.") at 1, ECF No. 8. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the Institute's motion to dismiss.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Altarum Institute's Memorandum in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint ("Def.'s Mem."), ECF No. 8-2; (2) Plaintiff Joanne Lynn's Opposition to Defendant Altarum Institute's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 9; and (3) the Defendant's Reply Memorandum in Response to Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Def.'s Reply"), ECF No. 11.

## I.     BACKGROUND

### A.     Factual Background

The following allegations are taken from the plaintiff's Amended Complaint unless otherwise indicated.[2]

The plaintiff "is a 70-year-old woman," who holds a "Doctor of Medicine degree[,]" "has been a tenured professor at two universities, has published 300 peer-reviewed medical journal articles, has written for major public commissions, has earned two Masters degrees in addition to her [medical degree], and has a number of honors for her work."  Am. Compl. ¶ 6.  The Institute is a "corporation with its headquarters in Ann Arbor, M[ichigan], and an office in Washington, D.C."  Id. ¶ 2.

"[I]n or around May 2011[,]" the Institute hired the plaintiff to serve "as the Director for the Center of Eldercare Improvement [('the Center')] to lead an [ ] initiative to improve end[-]of[-]life care in the Strategic Research Initiatives [G]roup, reporting to CEO/President Linc Smith and Vice President Jim Lee."  Id. ¶ 6.  The plaintiff was "at least 15 years older than her colleagues and supervisors[,]" id. ¶ 7, and the plaintiff's supervisors were aware that she was "significantly older than her colleagues[,]" id. ¶ 8.  "As one of her duties within the company, [the plaintiff] maintained a blog, MediCaring.org[,]" to which "[s]he posted frequently while working [for the Institute.]"  Id. ¶ 9.  "Smith and Lee encouraged [the plaintiff] to speak with the

---

[2] As the Institute correctly notes, see Def.'s Reply at 5–11, the plaintiff includes additional factual allegations in her opposition that are not present in her Amended Complaint.  Compare, e.g., Am. Compl. ¶ 17 (stating that, "[a]s part of [her] work with Congressman Suozzi, [the plaintiff] developed legislation, solicited stakeholder and policymaker input, and conversed with the conventional press and with[ ]persons having substantial presence in social media[,]" and that the Institute's "managers were aware of this work at all times" (emphasis added)), with Pl.'s Opp'n at 6 (stating that "speaking to the media was an essential part of her work with Congressman Suozzi, and [the Institute] knew of and approved this arrangement" (emphasis added)).  However, a non-pro-se "plaintiff may not amend [his, her, or its] complaint by the briefs in opposition to a motion to dismiss."  Kingman Park Civic Ass'n v. Gray, 27 F. Supp. 3d 142, 168 (D.D.C. 2014) (internal quotation marks and alteration omitted).  Accordingly, the Court will consider only those allegations in the plaintiff's Amended Complaint.

media to raise [the Institute's] profile" and the plaintiff "spoke with press from other countries and on topics other than those for which [the Institute] had funded projects." Id. ¶ 10. "Until 2020, [the Institute] never required [the plaintiff] to pre-approve these media contacts, though she often did work closely with the public relations team and generally informed them of press contacts, even after they were completed." Id. According to the plaintiff, "[b]eing visible in the press was a vital part of her job to promote the improvement of eldercare." Id.

"In or about 2017, there was a change in leadership" and the Center "was repositioned as a business group, not a public benefit group." Id. ¶ 11. The plaintiff was then "tasked [ ] with covering the Center['s] . . . expenses entirely through grants and other streams of income, instead of the previous system that funded the Center through earned income and a supplemental budget." Id. ¶ 12. "In or about April 2019, [the plaintiff] applied for a Health and Aging Policy Fellowship" at an external organization, "with the full support of [the Institute,]" and, "[w]hen she started this fellowship, she asked to move from a full-time to a part-time position within [the Institute]." Id. ¶ 14. "Thereafter, Anne Montgomery[,]"—"a woman significantly younger than" the plaintiff, who "lacked managerial and research experience and knowledge"—became the Director of the Center[.]" Id. ¶ 15. The plaintiff "continued to work in the Center . . . on a part-time basis, with Montgomery as her supervisor." Id.

In November 2019, the plaintiff "testified before the House Ways and Means Committee . . . (without [the Institute's] input on the content of her testimony)," and thereafter, "she agreed to spend her fellowship year in Congressman Tom Suozzi's office." Id. ¶ 16. While "work[ing] with Congressman Suozzi," the plaintiff "conversed with the conventional press and with[ ]persons having substantial presence in social media." Id. ¶ 17. The plaintiff asserts that "[the Institute's] managers were aware of this work at all times[.]" Id. ¶ 17.

3

"On or about February 4, 2021, [the Institute] circulated an updated media policy [ ] that [ ] prohibited employees from communicating with members of the media without approval from [both] the Director of Communications and Public Affairs and the employee's Center director." Id. ¶ 18. The plaintiff subsequently "contacted the Director of Communications and Public Affairs Sarah Litton," as well as the plaintiff's "direct supervisor[,] Anne Montgomery[,] to discuss this policy." Id. ¶ 19. The plaintiff "had a routine of informing Litton when time permitted about media communications and otherwise asking reporters to not be identified [as being associated] with [the Institute.]" Id. "Litton confirmed that this pattern made sense considering [the plaintiff's] employment specifications and that this constituted an exception [to] the policy for" the plaintiff. Id. "Litton [also] affirmed that press communications for issues outside of [the scope of the Institute's work] did not require pre-approval, and Montgomery agreed." Id. Litton and Montgomery "emphasized" that this arrangement reflected the plaintiff's "part-time position within the company as she was actively pursuing outside roles in order to [advance] eldercare improvement." Id.

"On or about July 9, 2021, Chief Human Resources Officer Lesa Litteral admonished [the plaintiff] for purportedly violating the media policy after [the plaintiff] gave a statement to a reporter about a topic unrelated to" the Institute. Id. ¶ 20. Although the plaintiff "had asked the reporter to quote her as 'a geriatrician in D[.]C[.,]' [ ] the reporter [had] listed [the plaintiff's] affiliation with [the Institute]." Id. The plaintiff "reminded [the Institute] that it would be impossible for her to coordinate with it before every press contact[,] as she was promoting a bill in Congress and was working on multiple policy issues." Id. ¶ 21. "In response, Litteral confirmed that [the Institute] would not interfere in [the plaintiff's] independent communications." Id.

4

"On or about July 10, 2021, . . . [the plaintiff] recorded a podcast interview[.]" Id. ¶ 22. Following the interview, "in an effort to include [the Institute] in her outside contact with the press despite" being told by "Litton, Montgomery, and Litteral" that she did not have to secure the Institute's approval regarding press communications, the plaintiff "contacted the [Institute's] communications department about whether she should use [an] [ ] attribution" to the Institute. Id. "Anya Day, [the Institute's] . . . interim lead for Communications[], advised [the plaintiff] to only use the [ ] attribution [to the Institute] for topics directly related to [the Institute]." Id. The plaintiff "took this as another clear signal that she did not need to inform [the Institute] about her outside projects and their press coverage." Id.

Thereafter, the Institute "began to refuse to allow [the plaintiff] to pursue proposals for grants and contracts[,]" "[d]espite [the plaintiff's] remarkable record of securing grants and contracts that supported her work toward eldercare improvement[.]" Id. ¶ 23. "In 2021, [the plaintiff] proposed over [six] separate initiatives for funding and [the Institute] refused to allow her to proceed." Id. ¶ 24. According to the plaintiff, "[i]n a research career that required securing funding to support oneself and one's colleagues, being unable to pursue new funding indicated that [she] was no longer wanted at the company." Id.

"In or about early September 2021, Tara Fowler, [the Institute's] manager of the division of Population Health, approached [the plaintiff] about transitioning to hourly employment as of October 1, 2021[.]" Id. ¶ 25. The plaintiff "suggested in response that Fowler delay this change until 2022, because [the plaintiff] had important projects to complete[,] [ ] had fully covered the funding for her part-time employment through the end of 2021[,]" and "was planning a minor surgery in November." Id. The plaintiff "also proposed that she remain as an hourly employee only on fully funded projects during 2022, in order to complete the [Agency for Healthcare

Research and Quality ("]AHRQ[")-]funded PACE evaluation" because, "[w]hile this project was funded by AHRQ, the funding r[a]n[] through [the Institute], and [the plaintiff] would need to be an employee of [the Institute] to finish her tasks on this important project." Id.  "This [proposal] was accepted by [the Institute]." Id.

"On or about September 29, 2021, an Associated Press reporter emailed [the plaintiff] about an article [that] he was writing[.]" Id. ¶ 27.  In response, the plaintiff "advised the reporter that [the Institute] was not working on this topic, helped [the reporter] with some background information on his topic, and suggested very briefly that he might be interested in a different topic [on which the Institute] was working[.]" Id.  Accordingly, the plaintiff "did not speak [about any of] the [Institute's] project[s] to the reporter." Id.  "Following this call, [the plaintiff] emailed Montgomery to let her know that this reporter may be interested in reporting on [one of] the [Institute's] project[s], for which Montgomery was communications lead." Id.

"[O]n or about October 4, 2021," the Institute "terminated [the plaintiff] . . . purportedly for violating its media policy repeatedly" by "speaking with th[e reporter from the Associated Press] in September [ ] 2021" and "being erroneously identified in the interview from July [ ] 2021." Id. ¶ 28.  The Institute "delegated [the plaintiff's] position in the AHRQ-PACE [evaluation] to Christine Stanik, who . . . is in her [forties]."³ Id. ¶ 29.

---

³ The Institute argues that the plaintiff's allegation that "Christine Stanik, [ ] upon information and belief is in her [forties,]" Am. Compl. ¶ 29, is a "conclusory allegation[,]" Def.'s Mem. at 10 n.10, that "the Court should not consider[,]" id.  In support of its argument, the Institute cites to Kowal v. MCI Communications Corp., 16 F.3d 1271 (D.C. Cir. 1994), in which the District of Columbia Circuit noted that the "standards for pleadings on information and belief must be construed consistent with the purposes of [Federal] Rule [of Civil Procedure] 9(b)[,]" id. at 1279 n.3, and thus "affirm[ed] the district court's determination that pleadings on information and belief require an allegation that the necessary information lies within the defendant's control, and that such allegations must also be accompanied by a statement of the facts upon which the allegations are based[,]" id.  However, Rule 9(b) applies to claims "alleging fraud or mistake[,]" Fed. R. Civ. P. 9(b), which are not alleged in this litigation, see generally Am. Compl.  Accordingly, the Court will not strike the plaintiff's allegation regarding Stanik's age.

6

B.     **Procedural History**

On January 24, 2022, the plaintiff initiated this civil action in the Superior Court for the District of Columbia. See Complaint for Equitable and Monetary Relief and Demand for Jury Trial ("Compl.") at 1, ECF No. 1-1. On February 22, 2022, the Institute removed the case to this Court based on diversity jurisdiction. See Notice of Removal at 1, ECF No. 1. Subsequently, on March 15, 2022, the plaintiff filed her Amended Complaint in this case. See Am. Compl. at 1. On March 29, 2022, the Institute filed its motion to dismiss the Amended Complaint, see Def.'s Mot. at 1; on April 12, 2022, the plaintiff filed her opposition to the Institute's motion to dismiss, see Pl.'s Opp'n at 1; and on April 26, 2022, the Institute filed its reply, see Def.'s Reply at 1.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). While the Court must "assume the[ ] veracity" of any "well-pleaded factual allegations[]" in a complaint, conclusory

allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not accept "legal conclusions cast as factual allegations[]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. In resolving such motions, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.  ANALYSIS

The Institute moves to dismiss the plaintiff's Amended Complaint for failure to state a claim under Rule 12(b)(6), arguing that the plaintiff has failed to establish that (1) "she was qualified at the time [the Institute] terminated her employment," Def.'s Mem. at 9 (emphasis omitted); (2) "she was disadvantaged in favor of a younger person," id. at 12; and (3) "her employment ended because of her age[,]" id. at 11 (emphasis in original). In response, the plaintiff argues that she has pleaded sufficient facts to show that (1) "she was qualified for her position," Pl.'s Opp'n at 10; (2) "she was disadvantaged in favor of a younger person, [although] she is not required to do so[,]" id. at 14; and (3) "her age was a motivating factor in [the Institute's] decision to terminate her[,]" id. at 12. The Court will begin by determining whether the allegations in the plaintiff's Amended Complaint adequately set forth a claim of discrimination based upon her age, before addressing the Institute's arguments.

A.  **Whether the Plaintiff Has Adequately Alleged a Claim of Age Discrimination Under the DCHRA**

Under the DCHRA, it is "unlawful to discriminate against an individual on the basis of age." Badwal v. Bd. of Trustees of Univ. of D.C., 139 F. Supp. 3d 295, 315 (D.D.C. 2015). "To state a prima facie claim for age discrimination under the . . . DCHRA, [a] plaintiff must show that he or she (1) was at least forty years of age, (2) suffered an adverse employment action, and (3) that there was some reason to believe that the adverse employment action was based on the employee's age."[4] Id. However, a "plaintiff need not plead all of these elements in order to overcome a motion to dismiss[,]" Miller v. Gray, 52 F. Supp. 3d 62, 67 (D.D.C. 2014), although "a plaintiff must furnish more than labels or conclusions or a formulaic recitation of the elements of a cause of action and his [or her] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" Spaeth v. Georgetown Univ., 839 F. Supp. 2d 57, 62 (D.D.C. 2012) (internal quotation marks omitted). Therefore, "[t]he plausibility standard articulated in Twombly, and confirmed in Iqbal, 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" Koch v. White, 967 F. Supp. 2d 326, 334 (D.D.C. 2013).

Here, the Court concludes that the plaintiff has met her burden under Twombly and Iqbal. "[C]onstru[ing] the [Amended C]omplaint in favor of the plaintiff," as the Court must do at this stage of the proceedings, Hettinga, 677 F.3d at 476, the Amended Complaint sets forth "a claim to relief that is plausible on its face[,]" Spaeth, 839 F. Supp. 2d at 62. According to the Amended Complaint, the plaintiff "is a 70-year-old woman[,]" Am. Compl. ¶ 6, and therefore satisfies the first element of a prima facie case of discrimination based upon age, see Badwal,

---

[4] "When evaluating claims under the DCHRA, the Court may look to cases interpreting the federal Age Discrimination in Employment Act ('ADEA')[.]" Badwal, 139 F. Supp. 3d at 315.

9

139 F. Supp. 3d at 315 ("A plaintiff must show that he or she [ ] was at least forty years of age[.]"). The plaintiff also alleges in her Amended Complaint that she was "terminated" by the Institute, see Am. Compl. ¶ 28, and therefore satisfies the second element of a prima facie case of discrimination based upon age, see Badwal, 139 F. Supp. 3d at 315 ("A plaintiff must show that he or she . . . suffered an adverse employment action[.]"); Newman v. D.C. Courts, 125 F. Supp. 3d 95, 104 (D.D.C. 2015) ("[L]oss of a job constitutes an adverse employment action.").

Regarding the third element of her prima facie case, the Court concludes that the plaintiff has likewise met her burden.

> [F]or the causation element, the standard at the motion[-]to[-]dismiss stage is not high, and courts, in this Circuit as elsewhere, rarely require more than an assertion that the plaintiff suffered an adverse action due to his [or her] age, so long as this assertion is accompanied by sufficient facts to [ ] put the defendant on notice of the incidences giving rise to the claim.

Badwal, 139 F. Supp. 3d at 315. In her Amended Complaint, the plaintiff alleges that she worked for the Institute, first on a full-time basis, see Am. Compl. ¶¶ 6–14, and then, later, on a part-time basis, see id. ¶¶ 14–25, from May 2011, see id. ¶ 6, to October 2021, when she was terminated, see id. ¶ 28. According to the plaintiff, "[w]hile [working] at [the Institute], [she] was at least 15 years older than her colleagues and supervisors[,]" id. ¶ 7, and her "supervisors knew that [she] was significantly older than her colleagues[,]" id. ¶ 8. See id. ¶ 30 (alleging that the Institute's "directors are knowledgeable of [the plaintiff's] age and tenure with the company"). The plaintiff further alleges that she had significant success while working for the Institute, including "secur[ing] funding for all personnel and to develop important initiatives with her team[,]" id. ¶ 13; and "having a near-perfect score on the grant application to the []AHRQ[] for the PACE project[,]" id. ¶ 23. The plaintiff alleges that, despite these accomplishments, the

Institute began "to send . . . signal[s] that [the plaintiff] was expected to leave [the Institute] soon." Id. ¶ 25. "In 2021," id., according to the plaintiff, the Institute "began to refuse to allow [her] to pursue proposals for grants and contracts[,]" id., which, "[i]n a research career that required securing funding to support oneself and one's colleagues, . . . indicated that she was no longer wanted at the company[,]" id. ¶ 24. Moreover, the plaintiff contends that the Institute "approached [the plaintiff] about transitioning to hourly employment as of October 1, 2021, apparently in an effort to reduce her compensation that was higher due to her decades of experience and to send an even stronger signal that [the plaintiff] was expected to leave [the Institute] soon." Id. ¶ 25.

In addition, the plaintiff asserts that, although she was terminated "purportedly for violating [the Institute's] media policy . . . when she spoke with th[e Associated Press] reporter in September [ ] 2021," id. ¶ 28, and when she was "erroneously identified [as associated with the Institute] in the interview from July [ ] 2021[,]" id., she had been informed by her supervisors that there was "an exception [to] the policy for [her,]" id. ¶ 19; see id. ¶ 21 (alleging that "Litteral confirmed that [the Institute] would not interfere in [the plaintiff's] independent communications" with the press). The plaintiff therefore alleges that "[t]he reason given for terminating [her] employment is in error . . . and [ ] served only as pretext for unlawful discrimination." Id. ¶ 41. Moreover, according to the plaintiff, the Institute "delegated [her] position in the AHRQ-PACE [project] to Christine Stanik, who upon [the plaintiff's] information and belief is in her [forties]." Id. ¶ 29.

Based on these allegations, the plaintiff's allegation that the Institute "discriminated against [her] based on her age when it terminated her on or about October 4, 2021[,]" id. ¶ 40, suffices to "put the [Institute] on notice of the incidences giving rise to the [plaintiff's] claim[,]"

11

Badwal, 139 F. Supp. 3d at 315.  Specifically, the plaintiff is alleging that the Institute's rationale for terminating her was a "pretext for unlawful discrimination[,]" Am. Compl. ¶ 41, and that her termination was in fact "based on her age[,]" id. ¶ 40, after a series of purported actions demonstrating that "she was no longer wanted at the company[,]" id. ¶ 24—specifically, "refus[ing] to allow [her] to pursue proposals for grants and contracts[,]" id. ¶ 23, and "approach[ing her] about transitioning to hourly employment[,]" id. ¶ 25.  Although the Institute "may ultimately show that it had a legitimate, non-discriminatory reason for" terminating the plaintiff's employment, Taylor v. Pompeo, Case No. 19-cv-2987 (CRC), 2021 WL 7904001, at *9 (D.D.C. 2021), the Court concludes that the plaintiff's allegations are sufficient to permit the Court to "draw [the] 'reasonable inference that the [Institute] is liable for the misconduct alleged[,]'" id. at *8 (quoting Iqbal, 556 U.S. at 678); see Nurridin v. Bolden, 674 F. Supp. 2d 64, 90 (D.D.C. 2009) ("Merely alleging that the employer's proffered reasons for the adverse employment actions is false may support an inference of discrimination sufficient to survive a motion to dismiss."); Badwal, 139 F. Supp. 3d at 315 (noting that "courts, in this Circuit as elsewhere, rarely require more than an assertion that the plaintiff suffered an adverse action due to his [or her] age, so long as this assertion is accompanied by sufficient facts to [ ] put the defendant on notice of the incidences giving rise to the claim").  Accordingly, the Court concludes that "the complaint in this matter contains sufficient allegations that address each element for a prima facie case of age discrimination."  Miller, 52 F. Supp. 3d at 67.

B.     The Institute's Arguments

The Institute argues that the plaintiff has failed to establish that (1) "she was qualified at the time [the Institute] terminated her employment," Def.'s Mem. at 9 (emphasis omitted); (2) "she was disadvantaged in favor of a younger person," id. at 12; and (3) "her employment

12

ended <u>because of</u> her age[,]" <u>id.</u> at 11 (emphasis in original).[5]  In response, the plaintiff argues that she has pleaded sufficient facts to show that (1) "she was qualified for her position," Pl.'s Opp'n at 10; (2) "she was disadvantaged in favor of a younger person, [although] she is not required to do so[,]" <u>id.</u> at 14; and (3) "her age was a motivating factor in [the Institute's] decision to terminate her[,]" <u>id.</u> at 12. The Court will address each of the Institute's arguments in turn.

### 1. Whether the Plaintiff Has Demonstrated that She Was Qualified

First, the Institute argues that the plaintiff "does not plausibly allege facts sufficient to show that 'she was qualified' for the part-time position [that] she held at the time her

---

[5] The Institute also argues that, because the Amended Complaint includes an allegation that Montgomery, the woman who replaced the plaintiff as "the Director of the Center[,]" Am. Compl. ¶ 15, is "significantly younger than [the plaintiff,]" <u>id.</u>, the plaintiff "asks this Court to accept that [her] <u>voluntary, personal decision</u> to move to part-time employment somehow transformed <u>her</u> decision into intentional age discrimination by [the Institute,]" Def.'s Mem. at 10 (emphasis added).  And, in her Amended Complaint, the plaintiff alleges that the Institute "discriminated against [her] based on her age when the[ Institute] replaced her with two younger women at various times in her career." Am. Compl. ¶ 39.  From the plaintiff's other allegations, it appears that these "two younger women[,]" <u>id.</u>, are (1) Montgomery, who replaced the plaintiff as "the Director of the Center[,]" <u>id.</u> ¶ 15, after the plaintiff "asked to move from a full-time to a part-time position[,]" <u>id.</u> ¶ 14; and (2) Stanik, to whom the Institute "delegated [the plaintiff's] position in the AHRQ-PACE [project]" following the plaintiff's termination, <u>id.</u> ¶ 29. However, in the plaintiff's opposition to the Institute's motion, her termination is the only adverse employment action she relies upon to support her discrimination claim. <u>See, e.g.</u>, Pl.'s Opp'n at 13–14 (arguing that the plaintiff "has pled sufficient facts that age was a motivating factor in [the Institute's] decision to terminate her"). Accordingly, the Court concludes that, although the plaintiff references Montgomery's promotion, the plaintiff has conceded the assertion of any claims based upon her "mov[ing] from a full-time to a part-time position[,]" Am. Compl. ¶ 14, and her replacement by Montgomery.  <u>See</u> <u>CD Int'l Enters., Inc. v. Rockwell Cap. Partners, Inc.</u>, 251 F. Supp. 3d 39, 46 (D.D.C. 2017) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (internal quotation marks omitted)).

Moreover, as the Institute correctly argues, <u>see</u> Def.'s Mem. at 10, "[a]n employee suffers an adverse employment action if he [or she] experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." <u>Allard v. Holder</u>, 840 F. Supp. 2d 269, 275 (D.D.C. 2012) (quoting <u>Forkkio v. Powell</u>, 306 F.3d 1127, 1131 (D.C. Cir. 2002)).  Absent allegations that the plaintiff's decision to move to part-time "was involuntary, and therefore qualifies as a constructive discharge[,]" <u>Hill v. Gray</u>, 28 F. Supp. 3d 47, 61 (D.D.C. 2014), which the plaintiff does not make, <u>see generally</u> Am. Compl., her move was voluntary and thus does not qualify as an adverse action.  <u>Cf.</u> <u>Allovio v. Holder</u>, 923 F. Supp. 2d 151, 154 (D.D.C. 2013) (noting that a plaintiff's "voluntary retirement did not constitute an adverse employment action"). Accordingly, assuming that the plaintiff is seeking to do so, the Court concludes that she may not rely on her voluntary decision to transition to part-time work in April 2019 as a separate claim of discrimination from the claim based upon her termination.

13

employment ended" because her "own allegations about her violations of [the Institute's] media policy suggest . . . that [the plaintiff] was not qualified for the part-time position <u>at the time [that the Institute] terminated her employment</u>." Def.'s Mem. at 9 (emphasis in original). Although phrased differently, this argument essentially asserts that the plaintiff's alleged violations of the Institute's media policy rendered her unqualified and thus were "a legitimate, nondiscriminatory reason[]" for her termination. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). However, "[a]t the motion[-]to[-]dismiss stage[,] [ ] an employment discrimination plaintiff need not anticipate legitimate, non-discriminatory reasons that may be proffered by the employer for the adverse employment action nor allege pretext to survive a motion to dismiss." <u>Easaw v. Newport</u>, 253 F. Supp. 3d 22, 27 (D.D.C. 2017). Accordingly, the Court need not decide at this stage of the litigation whether, in fact, the plaintiff's alleged violations of the Institute's media policy rendered her unqualified for her position and were thus "a legitimate, nondiscriminatory reason[]" for her termination. <u>McDonnell Douglas</u>, 411 U.S. at 802.[6]

### 2. Whether the Plaintiff Has Demonstrated that She Was Disadvantaged in Favor of a Younger Employee

Next, the Institute argues that the plaintiff "fails to allege facts sufficient to show that employees who were similarly situated and substantially younger than [her] were <u>not</u> terminated

---

[6] The parties also dispute whether, aside from her alleged violations of the Institute's media policy, the plaintiff was qualified for her position. <u>See</u> Pl.'s Opp'n at 10 (arguing that the plaintiff "has pled an array of facts that support her qualifications for her positions at [the Institute]"); Def.'s Mem. at 9 (arguing that the plaintiff's "subjective allegations about her job performance during employment generally do not suffice to establish the second element of her claim"). However, a "plaintiff need not plead all of the[] elements [of a prima facie case] in order to overcome a motion to dismiss." <u>Miller</u>, 52 F. Supp. 3d at 67. Moreover, the parties conflate the requirements for a <u>prima facie</u> case for failure-to-hire claims, which require a showing that "the plaintiff . . . was qualified for the position[,]" <u>Miller</u>, 52 F. Supp. 3d at 6, with the requirements for a <u>prima facie</u> case for termination claims, which only require a showing that the plaintiff "(1) was at least forty years of age, (2) suffered an adverse employment action, and (3) that there was some reason to believe that the adverse employment action was based on the employee's age." <u>Badwal</u>, 139 F. Supp. 3d at 315. Accordingly, the parties' arguments about whether the plaintiff has adequately alleged that she was qualified to be in her position at the Institute are irrelevant.

for violating [the Institute's] media policy." Def.'s Mem. at 12 (emphasis in original).[7] However, as noted above, a "plaintiff need not plead all of the[] elements [of a prima facie case] in order to overcome a motion to dismiss." Miller, 52 F. Supp. 3d at 67. Moreover, a plaintiff is not required to demonstrate "that [he or] she was treated differently than similarly situated employees" in order to "establish a prima facie case of disparate treatment discrimination[.]" George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005) (underline added). Although "[o]ne method by which a plaintiff can" establish a prima facie case "is by demonstrating that [he or] she was treated differently from similarly situated employees who are not part of the protected class[,] . . . this is not the only way." Id. (underline added and internal quotation marks omitted). Here, as discussed above, the allegations in the Amended Complaint suffice to "put the [Institute] on notice of the incidences giving rise to the [plaintiff's] claim[,]" Badwal, 139 F. Supp. 3d at 315, which is all that the plaintiff is required to do at this stage of the litigation. Accordingly, this argument does not merit dismissal of the Amended Complaint.

3. **Whether the Plaintiff Has Adequately Pled that Age Discrimination Was the But-For Cause of Her Termination**

Third and finally, the Institute argues that the plaintiff's "own allegations about the media policy violations belie her claim of intentional age discrimination" and thus she "does not allege facts sufficient to show that her employment ended because of her age, which she must do."

---

[7] Additionally, the Institute argues that "nothing in [the] Amended Complaint even hints that any of the decisionmaker(s) as to [the plaintiff's] termination, whom she fails to identify, including age(s), 'harbored any discriminatory animus' toward [the plaintiff]." Def.'s Mem. at 13. In response, the plaintiff argues that discriminatory animus "is not a required element of the DCHRA." Pl.'s Opp'n at 15. The Court agrees with the plaintiff. As the Court noted above, see Section III.A, "[t]o state a prima facie claim for age discrimination under the . . . DCHRA," Badwal, 139 F. Supp. 3d at 315—which, as also noted above, a plaintiff is not required to do at the motion-to-dismiss stage, see Miller, 52 F. Supp. 3d at 67 (A "plaintiff need not plead all of the[] elements [of a prima facie case] in order to overcome a motion to dismiss.")—"[a] plaintiff must show that he or she (1) was at least forty years of age, (2) suffered an adverse employment action, and (3) that there was some reason to believe that the adverse employment action was based on the employee's age[,]" Badwal, 139 F. Supp. 3d at 315. Therefore, the plaintiff need not allege discriminatory animus to establish a prima facie case, but merely that "there was some reason to believe that [her termination' was based on [her] age[.]" Id. Accordingly, the plaintiff's failure to allege discriminatory animus does not merit the dismissal of her age discrimination claim.

15

Def.'s Mem. at 11 (emphasis in original).  In support of its argument, the Institute cites Blackwell v. SecTek, Inc., 61 F. Supp. 3d 149 (D.D.C. 2014), for the proposition that "an adverse employment action is taken because of an employee's age only if age was the but-for cause of the challenged adverse employment action[,]" id. at 161.  See Def.'s Mem. at 11–12.  However, as the plaintiff correctly notes in response, see Pl.'s Opp'n at 12, the Institute misapprehends the law on this subject.  Under both Supreme Court precedent regarding the Age Discrimination in Employment Act ("ADEA") and District of Columbia Court of Appeals precedent regarding the DCHRA, "[a] plaintiff's burden [ ] is to show that a protected characteristic was a substantial factor in the employment decision[,]" i.e., "the protected characteristic was a significant motivating factor bringing about the employer's decision."  Rose v. United Gen. Contractors, 285 A.3d 186, 197 (D.C. 2022); see also Babb v. Wilkie, __ U.S. __, 140 S. Ct. 1168, 1173–74 (2020) (holding that the ADEA "does not require proof that an employment decision would have turned out differently if age had not been taken into account").  Here, for the reasons stated above, see supra Section III.A, the Court concludes that the plaintiff has met her burden to allege facts that "support an inference of discrimination sufficient to survive a motion to dismiss[,]" Nurridin, 674 F. Supp. 2d at 90.  Accordingly, the plaintiff's failure to allege that discrimination was a but-for cause of her termination does not merit dismissal of the Amended Complaint.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the Institute's motion to dismiss.

16

**SO ORDERED** this 26th day of June, 2023.[8]

REGGIE B. WALTON<br>
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.